# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**TELSMITH, INC.,**
      **Plaintiff,**

    v.                                                    Case No. 12-C-1197

**BOSCH REXROTH CORP.,**
      **Defendant.**

---

## DECISION AND ORDER

The plaintiff in this case, Telsmith, Inc., manufactures crushing and mineral-processing equipment for the global mining and aggregate industries. One of its products is known as a "track plant." This is a mobile crushing device used to crush large pieces of rock and other material into smaller pieces. The heart of the track plant is a "jaw crusher," which is a motor-driven device that crushes rock through use of a "jaw" that swings open and closed.

In 2006, Telsmith began using a certain type of hydraulic motor, the CA 50-25, which was sold by Hagglunds Drives, Inc. ("Hagglunds"), in its jaw crushers. According to the complaint, Telsmith decided to use this motor after Hagglunds told Telsmith that the motor would be suitable for use in Telsmith's jaw crushers. In 2008, Hagglunds merged with the defendant in this case, Bosch Rexroth Corp. ("Bosch"), and Telsmith continued to purchase CA 50-25 motors for its jaw crushers from Bosch. Between 2006 and 2011, Telsmith purchased a total of twenty-six CA 50-25 motors from Hagglunds and Bosch.

In November 2012, Telsmith commenced the present action against Bosch, alleging breach of warranty and negligent misrepresentation. Telsmith alleges that sixteen of the

twenty-six motors it purchased have failed, and that these failures have cost Telsmith more than $300,000. Telsmith alleges that its costs include payments for replacement motors, repair costs, expenses incurred to replace other track-plant components that were damaged by the motor failures, and expenses for Telsmith service technicians related to field motor replacements. (Compl. ¶ 39.) Telsmith further alleges that the "persistent" failures of the CA 50-25 motors damaged its business reputation. (Id. ¶ 40.)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Bosch moves to dismiss Telsmith's claims for breach of warranty and negligent misrepresentation. In its response to this motion, Telsmith stated that it is no longer pursuing its claim for negligent misrepresentation. See Br. in Opp. at 1 n.1, ECF No. 13. That leaves the claim for breach of warranty, which Bosch contends should be dismissed on the ground that it is barred by various provisions of Hagglund's and Bosch's written terms and conditions.[1] Bosch also contends that any claim arising out of sales made by Hagglunds prior to its merger with Bosch in 2008 are barred by either the shortened statute of limitations contained in Hagglunds's terms and conditions or the ordinary four-year statute of limitations set forth in section 2-715 of the Uniform Commercial Code ("UCC").

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Co. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court

---

[1]Although Hagglunds's and Bosch's written terms and conditions were not attached to the complaint, Telsmith does not object to my considering them in connection with Bosch's motion to dismiss.

2

to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Id. This means that "the complaint taken as a whole must establish a nonnegligible probability that the claim is valid, though it need not be so great a probability as such terms as 'preponderance of the evidence' connote." Atkins v. City of Chicago, 631 F.3d 823, 832 (7th Cir. 2011).

In its complaint, Telsmith alleges that the motors were subject to two express warranties. The first warranty is one against defects in materials and workmanship. Technically, there are two such warranties—one made by Hagglunds and another made by Bosch. They appear in each entity's written terms and conditions, which were furnished to Telsmith at the time of each sale. Bosch does not dispute that these warranties against defects in materials and workmanship were made. Rather, it contends that the warranty made by Hagglunds expired before Telsmith commenced this suit and that the sole remedy for breach of either the Hagglunds warranty or the Bosch warranty is repair or replacement of the defective product. Telsmith does not dispute that the Hagglunds warranty against defects in materials and workmanship has expired, see Br. in Opp. at 16–17 (arguing only that claim based on Hagglunds "suitability" warranty is not time-barred), and therefore the Bosch warranty is the only warranty against defects in materials and workmanship at issue. The second warranty mentioned in the complaint is a warranty that Telsmith alleges Hagglunds created when it told Telsmith that the CA 50-25 motors would be suitable for use in Telsmith's jaw crushers. Telsmith refers to this alleged express warranty as the "suitability" warranty. See Br. in Opp. at 5.

3

I start by examining whether the complaint states a claim for breach of the Bosch warranty against defects in materials or workmanship. Bosch does not contend that Telsmith has failed to allege that the motors contained defects in materials or workmanship. Rather, Bosch contends that Telsmith seeks remedies that are not available under the warranty against defects in materials and workmanship. As noted, Bosch's written warranty states that Telsmith's sole remedy is repair or replacement of the warranted products. Telsmith, however, seeks additional remedies, such as compensation for damage caused to other components of the track plants and for harm caused to its business reputation. It is true that compensation for these forms of harm is not available under the terms of the warranty. Still, at this stage of the case, it is not implausible to think that Telsmith is entitled to some relief under the terms of the warranty. The complaint alleges that Bosch has been unable to repair or replace the defective motors, and so at a bare minimum Telsmith is entitled to seek enforcement of the repair-or-replace remedy, even if it may not be entitled to pursue other remedies.

Moreover, under Article 2 of the UCC, a court may set aside an exclusive repair-or-replace remedy if it is shown that such remedy has failed of its essential purpose. UCC § 2-719(2).[2] This can happen when the seller is unable to repair the defective goods within a reasonable period of time. See James J. White & Robert S. Summers, Uniform Commercial Code, Hornbook Series 603 (6th ed. 2010). In the present case, Telsmith has alleged facts from which it can be plausibly inferred that Bosch has been unable to repair or replace the defective motors within a reasonable time. (Compl. ¶¶ 22–38.) Thus, even

---

[2]The Bosch terms and conditions are governed by Illinois law. Illinois has adopted the Uniform Commercial Code.

4

if many of the forms of damages claimed by Telsmith would be barred by the exclusive repair-or-replace remedy, I cannot, based on the pleadings alone, say that that remedy has not failed of its essential purpose.[3]

Bosch contends that even if the exclusive repair-or-replace remedy were set aside, many of Telsmith's claimed damages would fall within the contract's exclusion of certain forms of damages. This argument is based on the following provision of the terms and conditions:

> [Bosch] shall not be liable for any indirect, consequential, exemplary, special, incidental or punitive damages, including, without limitation, loss of use, loss of business, revenue, profit or goodwill, downtime costs, damage to associated equipment, cost of substitute goods, facilities or services, or claims of Buyer's customers for such damages, or other commercial or economic damages or costs, that may arise out of, in conjunction with or relate to, the failure of any Goods sold by [Bosch] to Buyer. . . .

(Bosch Terms & Conditions § 11.1.) Bosch contends that this provision bars Telsmith from recovering any form of damages, whether classified as direct or consequential. However, to the extent that this clause purports to bar Telsmith from recovering damages that are properly classified as direct damages, it would be invalidated along with the exclusive repair-or-replace remedy if the exclusive remedy were deemed to fail of its essential purpose. That is because, if the repair-or-replace remedy were set aside, Telsmith would

---

[3]Bosch contends that the complaint conclusively demonstrates that Telsmith did not give it a reasonable opportunity to repair or replace the defective motors, and that therefore Telsmith cannot plausibly contend that the repair-or-replace remedy has failed of its essential purpose. Specifically, Bosch points to allegations in the complaint suggesting that Telsmith rebuffed Bosch's attempt to replace the defective motors with "coated" motors. However, although Telsmith's allegations with respect to the coated motors may be relevant to whether Telsmith gave Bosch a reasonable opportunity to cure the defects, those allegations do not conclusively show that the repair-or-replace remedy has not failed of its essential purpose.

5

have to be allowed to recover at least direct damages. Otherwise, the effect of setting aside the exclusive remedy would be to provide Telsmith with no remedy whatsoever, and that would be absurd. Thus, if the exclusive repair-or-replace remedy were set aside, the damages limitation quoted above would be applicable only to damages properly classified as indirect or consequential. However, whether Telsmith's damages are properly classified as indirect or consequential rather than direct is a complicated question that is highly fact-intensive, see Rexnord Indus. LLC v. Bigge Power Constructors, __ F. Supp. 2d __, 2013 WL 1491874, at *2–5 (E.D. Wis. April 12, 2013), and thus it cannot be resolved on the basis of the pleadings alone. Accordingly, I leave the question of whether any of Telsmith's claimed damages are incidental or consequential for resolution during further proceedings.

The remaining issues raised by Bosch's motion to dismiss concern the alleged warranty of "suitability" given by Hagglunds. This alleged warranty appears in an email message from a Hagglunds sales manager to a Telsmith product engineer. The email, which was sent in May 2006, states in pertinent part as follows:

> I hope all is going well. I have reviewed your application and I feel that our motor can only fit on the jaw crusher application. The impact crusher and cone crusher would be possible if we could limit the speed to 400 rpm. Nevertheless, I have quoted you the motor and pump for the jaw crusher. I have attached a spreadsheet with the motor options for the jaw crusher application. My preference would be the CA 50-25 motor. This option would have the highest operating pressure but it would require the smallest pump. The second preference would be the CA 50-32. This would have a lower operating pressure but the pump would be at maximum stroke at 230 rpm. The last option is the CA 50 motor. This would have the lowest operating pressure but it would require a much larger pump. With the larger pumps, you will also have to increase your line size to 1 ½" from 2". The spread sheet should summarize this.
>
> . . . .

> I will give you a call in a few days to discuss. Let me know if you need any
> additional information.

Ex. A to Telsmith Br. in Opp., ECF No. 13-1.[4] Telsmith contends that the statements in this email constitute an express warranty that the CA 50-25 motor would be suitable for use in Telsmith's jaw crushers. Bosch disputes that the statements constitute an express warranty, but it contends that I need not even address whether the statements constitute an express warranty because both Hagglunds's and Bosch's written terms and conditions explicitly disclaim all warranties other than the warranty against defects in materials and workmanship discussed above.

Telsmith agrees that both companies' terms and conditions purport to disclaim all warranties other than the warranty against defects in materials and workmanship. However, Telsmith contends that this disclaimer is not effective against the alleged warranty of suitability because, under UCC 2-316(1), a seller cannot both make an express warranty and then later disclaim it.[5] It is true that under 2-316(1), words tending to disclaim an express warranty are rendered "inoperative" if they cannot be harmonized with language creating the warranty. However, the rule that words disclaiming an express warranty are rendered inoperative is subject to the UCC's provision on parol evidence, section 2-202.

---

[4] The parties agree that I may consider this email in connection with Bosch's motion to dismiss even though it was not attached to the complaint.

[5] Section 2-316(1) states:

> Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of [section 2-202] on parol or extrinsic evidence, negation or limitation is inoperative to the extent that such construction is unreasonable.

Here, Bosch contends that the UCC's parol-evidence rule prevents Telsmith from introducing evidence concerning the alleged warranty of suitability.

Under both Illinois's and Ohio's[6] version of the UCC, section 2-202 provides as follows:

> Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented
>
> (a) by course of performance, course of dealing, or usage of trade (Section 1-303); and
>
> (b) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.

This provision contains two rules that are relevant here. First, if the parties intended a writing to constitute the "final expression of their agreement with respect to such terms as are included therein," then the terms included in the writing may not be "contradicted" by evidence of any prior agreement or contemporaneous oral agreement. Second, even if the parties intended a writing to constitute a final expression of their agreement, that agreement can be supplemented by evidence of "consistent additional terms" unless the court finds the writing to have been intended as a "complete and exclusive" statement of the terms of the parties' agreement.

---

[6]The Hagglunds terms and conditions are governed by Ohio law.

8

In the present case, Telsmith contends that the parol-evidence rule does not bar evidence concerning the alleged warranty of suitability because it is plausible to infer that the written terms and conditions were not intended to be complete and exclusive statements of the terms of the parties' agreement. However, even if it were true that the terms and conditions were not intended to be complete and exclusive statements of the terms of the parties' agreement, it would not follow that Telsmith could introduce evidence of the alleged warranty of suitability. That is because the alleged warranty of suitability is not a "consistent additional term." Instead, since both the Hagglunds and the Bosch terms and conditions state that the express warranty against defects in materials and workmanship is exclusive and in lieu of all other warranties, whether express or implied, evidence concerning the existence of any express warranty of suitability would <u>contradict</u> the terms and conditions. As noted, under the parol-evidence rule, evidence of terms that contradict the terms of a writing may not be considered unless the parties did not intend the writing to be a <u>final</u> expression of the terms of their agreement. Thus, whether the parties intended the terms and conditions to be complete and exclusive is not the relevant question. The relevant question is whether the parties intended the terms and conditions to be final expressions of their agreement with respect to warranty liability. <u>See</u> White & Summers, <u>supra</u>, at 121 ("Of course, even if the judge decides the writing is not complete and exclusive, yet decides it is a final written expression as to some terms, evidence of contradictory prior or contemporaneous terms may not be admitted.") (emphasis deleted).[7]

---

[7]Telsmith might contend that if the disclaimer of the express warranty of suitability were invalidated under 2-316(1), then parol or extrinsic evidence concerning the existence of the warranty of suitability would not contradict the terms and conditions because the disclaimer in the terms and conditions would not "exist." However, as noted, 2-316(1) is

9

In the present case, I can find nothing in either the complaint or Telsmith's brief in opposition to Bosch's motion to dismiss that gives rise to a plausible inference that the parties did not intend the terms and conditions to contain final terms with respect to the warranties made by Hagglunds and Bosch in connection with the sale of CA 50-25 motors. Telsmith points out that the terms and conditions were not necessarily complete because they lacked information about the exact products purchased, quantity, and price. But again, completeness is different from finality, and the lack of terms concerning product, quantity, and price does not suggest that the terms concerning warranty were not intended to be final. Telsmith draws my attention to no other facts suggesting that the terms concerning warranty were not intended to be final, and so I have no basis for concluding that there is a nonnegligible probability of Telsmith's being able to enforce the alleged warranty of suitability.[8] Accordingly, to the extent Telsmith's claim for breach of warranty is premised on the existence of the warranty of suitability, such claim is dismissed.

---

itself subject to the parol-evidence rule, and thus I must apply the parol-evidence rule before applying the rule that express warranties, once made, cannot be disclaimed. Accordingly, for purposes of applying the parol-evidence rule, the disclaimer of all other express warranties in the terms and conditions must be deemed to "exist."

[8]Telsmith points out that the Bosch terms and conditions state that they constitute "the final agreement between the parties related to the subject matter of these Terms and Conditions," and also that the terms and conditions "say nothing about which motor that Bosch recommended for Telsmith's intended application." Br. in Opp. at 10. However, I do not see how these two facts support Telsmith's claim. The quoted provision indicates that the terms and conditions were intended to be final, and again, one such final term was that there were no warranties other than the express warranty against defects in materials and workmanship. Thus, evidence of any other warranty, such as the warranty of suitability, would be evidence of terms contradicting the final terms and would be excluded by the parol-evidence rule.

10

## CONCLUSION

For the reasons stated, **IT IS ORDERED** that Bosch's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. The motion is granted to the extent that Telsmith's claim for negligent misrepresentation, its claim for breach of the alleged warranty of suitability, and any claim based on the Hagglunds warranty against defects in materials and workmanship are dismissed. However, Telsmith's claim for breach of the Bosch express warranty against defects in materials and workmanship is not dismissed.

Dated at Milwaukee, Wisconsin, this 21st day of May, 2013.

    s/ Lynn Adelman
    _____
    LYNN ADELMAN
    District Judge

11

Case 2:12-cv-01197-LA   Filed 05/21/13   Page 11 of 11   Document 15